Twinboro Corporation v. Commissioner.
Twinboro Corp. v. Commissioner
Docket No. 107312.
United States Tax Court
1943 Tax Ct. Memo LEXIS 225; 2 T.C.M. (CCH) 369; T.C.M. (RIA) 43318; June 29, 1943
*225 1. Prior to the taxable years here involved portions of certain properties owned by petitioner were condemned and taken for street widening. The compensation for the taking was paid to petitioner in the taxable years 1932, 1935 and 1936. Held, under section 112(f) of the Revenue Acts of 1932, 1934 and 1936, petitioner did not expend any of the award money in the establishment of a replacement fund but did expend part of the award money forthwith in good faith in the acquisition of other property similar or related in service or use to the property taken. Held, further, since the amount of the award money not so expended was in excess of the gain, the entire gain should be recognized. 2. Where petitioner has failed to show that the depreciation allowed by the respondent was unreasonable, held, the respondent's determination thereof is sustained. 3. Upon the record, amounts determined which petitioner is entitled to deduct for each of the taxable years 1935, 1936 and 1937 as reasonable allowances for salaries or other compensation paid to its officers for services actually rendered to petitioner in those years. 4. During 1935 petitioner paid a commission for the acquisition *226 of a long-term lease and claimed the entire amount paid as a deduction in 1935. Held, the respondent did not err in determining that the commission should be capitalized and amortized over the term of the lease. Edward T. Blair, 31 B.T.A. 1192, 1205, followed. 5. During 1936 petitioner received in addition to the above awards a certain amount designated as interest. Held, the amount so designated did not accrue as income until 1936 when the final court decree was entered. Patrick McGuirl, Inc. v. Commissioner, 74 Fed. (2d) 729, followed. Held, further, the difference between the amount so received and the amount reported in 1936 was correctly added to income by the respondent. William Cogger, Esq., 315 Evening Star Bldg., Washington, D.C., and Philip F. Biggins, Esq., for the petitioner. Thomas H. Lewis, Jr., Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion This proceeding involves the determination by the respondent of deficiencies in income and excess-profits taxes against petitioner in amounts and for taxable years as follows: Year
Income Tax
Tax
1932
$ 2,281.31
1935
235.03
1936
21,390.68
$8,529.46
1937
102.61
*227 Petitioner has assigned eight errors as follows: (a) For the year 1932 the Respondent erred in adding to Petitioner's income for 1932, as capital gain, $20,445.36. (b) For the year 1935 the Respondent erred in adding to Petitioner's income for 1935, as capital gain $10,806.60. (c) For the year 1936 the Respondent erred in adding to Petitioner's income for 1936, as capital gain, $79,285.62. (d) For the year 1932 Respondent erred in adding to Petitioner's income, as taxes. $3,125.49. (e) For the year 1932 the Respondent erred in disallowing depreciation of $231.50 as a deduction from Petitioner's income; for the year 1935 in disallowing depreciation of $106.50; and for the year 1936 in disallowing depreciation of $136.52. (f) For the year 1935 the Respondent erred in disallowing $4,000 as salaries of officers of Petitioner corporation; and for the years 1936 and 1937, respectively by disallowing salaries of $3,600 for each year. (g) For the year 1935 the Respondent erred by adding to Petitioner's income for that year $4,200 alleged leasehold cost. (h) For the year 1936 the Respondent erred by adding to Petitioner's income for that year, as interest, $15,299.33. In addition *228 to the above adjustments to net income made by the respondent and which adjustments petitioner has assigned as error, the respondent also made adjustments to net income for the year 1935 on account of interest, for the years 1936 and 1937 on account of leasehold cost amortization, and for the year 1937 on account of depreciation, which adjustments for interest, leasehold cost amortization and depreciation have been accepted by petitioner. Petitioner offered no evidence in connection with assignment of error (d) and it is, therefore, assumed that petitioner has waived that assignment. Findings of Fact Petitioner is a corporation with its principal office in Flushing, New York. Its returns for the periods here involved were filed with the Collector of Internal Revenue at Brooklyn, New York. The returns were made on the accrual basis. Issues (a), (b) and (c). The respondent in adjusting petitioner's net income for the years 1932, 1935 and 1936 added thereto as capital gain the amounts of $20,445.36, $10,806.60 and $79,285.62, respectively. In a statement attached to the deficiency notice he explained the adjustment for 1932 as follows: (a) It is held that the profit realized *229 from the condemnation of property by the City of New York constitutes taxable income since the proceeds of the awards were not forthwith expended in the acquisition of other property similar or related in service or use to the property condemned; nor in the acquisition of control of a corporation owning such property; nor in the establishment of a replacement fund, in accordance with the provisions of section 112(f) of the applicable Revenue Acts. [Here follows a computation resulting in a determination of profit from the condemnation of property for the year 1932 of $20,445.36.] The respondent's explanation of the adjustments for 1935 and 1936 was the same as for 1932, except for the computation of the respective capital gains of $10,806.60 and $79,285.62. On May 23, 1930, the City of New York commenced proceeding for the condemnation and taking of property necessary to widen a public street known as Northern Boulevard, sometimes also called Broadway, in Flushing, Borough of Queens, New York, New York. Title to the property taken passed to the City of New York on November 4, 1931. A part of the property taken was at the time of the taking owned by petitioner and consisted of *230 two parcels designated on the damage map in the condemnation proceeding as parcels Nos. 17 and 30, respectively. Petitioner was paid for this taking by the City of New York on dates and in amounts as follows: Parcel
Designated
Designated
Date
No.
as Award
as Interest
Total
May 12, 1932
17
$ 9,793.20
$ 9,793.20
May 12, 1932
30
43,372.20
43,372.20
November 7, 1935
17
11,706.80
$ 3,296.60
15,003.40
May 4, 1936
30
92,127.80
27,228.00
119,355.80
$157,000.00
$30,524.60
$187,524.60
In collecting these awards petitioner expended for legal and title fees $2,974.36 in 1932, $900.20 in 1935, and $8,354.90 in 1936, or a total of $12,229.46. The City of New York made an assessment of benefits against land not taken in connection with parcel 30 amounting to $4,487.28, which amount was deducted from the payment made to petitioner on May 4, 1936. The amount of capital gain realized by petitioner (exclusive of interest) due to the taking of the above mentioned property was as follows: 1932
$ 20,445.36
1935
10,806.60
1936
79,285.62
$100,537.58
The amount of the balance of the award for parcel 17 was in dispute and in litigation until the *231 latter part of the year 1935 when the dispute was settled. The amount of the balance of the award for parcel 30 was in dispute and in litigation until the early part of the year 1936 when the dispute was settled. The above total awards were for land and improvements, respectively, as follows: Parcel
Improve-
No.
Land
ments
Total
17
$ 18,500
$ 3,000
$ 21,500
30
107,500
28,000
135,500
$126,000
$31,000
$157,000
The nature of the above properties which were compulsorily or involuntarily converted into money was as follows. Parcel 17 was known as No. 7 Broadway and consisted of a tract of land about 60 feet east from Flushing River and about 125 feet west from Lawrence Street having a frontage of about 20 feet on Broadway and uniform width for a depth of about 65 feet. It was improved by a one-story frame store and a two-story frame dwelling. Both the store and the dwelling were rented to tenants whose occupancy had been continuous for a number of years. Parcel 30 was known as 47-49 Broadway and consisted of a tract of land about 178 feet west from the corner of Prince Street having a frontage of about 43 feet on Broadway and extending back therefrom *232 about 100 feet. It was improved by a two-story brick automobile showroom and garage and a one-story concrete block office. The showroom, garage and office were rented to tenants whose occupancy had been continuous for a number of years. In closing its books for the year 1932, petitioner set up on the liability side of its ledger an account called "Replacement Fund" in the amount of $50,191.04, which amount represented the total of the two above-mentioned partial awards received in 1932 less the above-mentioned collection fees paid in 1932. On March 15, 1933, petitioner's vice president, William J. Halleran, addressed a letter to the Collector at Brooklyn, the body of which is as follows: We enclose herewith corporation returns for the Flushingside Realty & Construction Company. Twinboro Corporation and the Winter Realty & Construction Company. You will note, in each instance, there has been set up a figure headed "replacement fund". This figure represents sixty (60) percent of the City's appraisal, of an award due each corporation for property taken by condemnation, along Northern Boulevard, Flushing, New York. The balance of this award has not, as yet, been paid. It is the *233 intention of each corporation, upon receipt of the balance of the award, to replace same in property in similar or related in service, or use of the property so converted; or, in the acquisition of control of corporation owning such other property. Upon receipt of the balance of the award on parcel 17 on November 7, 1935, petitioner increased the amount of the account captioned "Replacement Fund" on the liability side of its ledger from $50,191.04 to $60,997.64. This increase of $10,806.60 represented the difference between the abovementioned amount of $11,706.80 received on November 7, 1935, and the above-mentioned collection fees paid in 1935 of $900.20. Upon receipt of the balance of the award on parcel 30 on May 4, 1936, petitioner increased the amount of the account captioned "Replacement Fund" on the liability side of its ledger from $60,997.64 to $144,770.54. This increase of $83,772.90 represented the difference between the abovementioned award money received in 1936 and the above-mentioned collection fees paid in 1936. On February 3, 1937, petitioner filed with the Commissioner of Internal Revenue as "Application to Establish a Replacement Fund" on Form 1114, revised February *234 1927. This application had two schedules attached thereto which were designated as "Schedule A - Statement of Facts" and "Schedule B - Surety Bond". In Schedule A petitioner stated "1937" as the "Date replacement will be completed." The bond was for $61,000, but was not signed, pending approval by the Commissioner. The printed instructions on this Form 1114 were in part as follows: 1. The applicant should execute the form of application in triplicate and fill in Schedule A. * * * 2. The applicant should execute the surety bond (Schedule B) or he penal bond (Schedule C) in triplicate, inserting the amount and indicating the surety or depositary proposed. 3. The applicant should then forward all three copies of the form to the Commissioner of Internal Revenue, who will consider the application and, if he grants it, will sign the permit and return the forms to the applicant. 4. The applicant should then forthwith procure the completion of the bond (Schedule B or C) in triplicate and submit it for approval by the Commissioner, which must be given before the permit will become effective. After the application is approved, one copy will be retained by the Commissioner, one copy returned *235 to the applicant, and one copy will be forwarded to the surety if Schedule B is executed. The above-mentioned application has never been approved by the Commissioner, and the surety bond (Schedule B) has never been completed. On February 19, 1937, the office of the Commissioner addressed a letter to petitioner, the body of which is as follows: Receipt is acknowledged of your application to establish a replacement fund in connection with property condemned for street widening in Flushing, New York. You are advised that your application is being referred to the internal revenue agent in charge at Brooklyn, New York, for verification and comment and that upon receipt of the revenue agent's report, the matter will receive prompt attention by this office. In any further correspondence in connection with this office, please refer to IT:B:7-JAPF. The deficiency notice containing the above-mentioned holding that petitioner had not established a replacement fund or had not forthwith expended the proceeds in the acquisition of other property similar or related in service or use to the property condemned was mailed to petitioner on March 6, 1941. In November 1930 petitioner acquired from *236 Flushingside Realty and Construction Company a tract of land at State and Farrington at a cost of $33,057.85. This land had been acquired by Flushingside Realty and Construction Company in July 1930. During the period commencing August 1930 and ending March 1931, the petitioner erected a bus garage on this tract at a cost of $109,865.70. In June 1935 and in May 1936, the petitioner paid special assessments amounting to $2,117.36 which it added on its books to the cost of the improvements. The improvements consist of a one-story fire proof garage 165 feet by 235 feet which after standing idle a short time was first rented about 1932 to King Kullen and later in 1935 was leased for a period of 15 years to the North Shore Bus Company at a graduated rental beginning at approximately $15,000 a year. On November 30, 1930, petitioner acquired a vacant lot at Northern Boulevard and Bell Avenue at a cost of $28,346.55. The lot is 50 feet by 200 feet on the south side of Northern Boulevard near Wagner's Garage and runs through the block to the north side of Morrick Avenue. It is one of the few unrestricted lots in this locality that can be used for garage purposes. In June 1932 petitioner *237 acquired an improved property at 40-11 (106) Main Street. This property was acquired by the payment of $20,000 in cash and the assumption of a mortgage thereon for $60,000. The mortgage is still outstanding and unpaid. On the books of the company $10,000 of the cash payment has been apportioned to the improvements on this property. The building is a four-story brick business building. The first story is 25 feet by 100 feet and the other three stories are each 25 feet by 80 feet. The lot is 25 feet by 100 feet. At the time of its acquisition the first and second floors were occupied as a restaurant by a tenant who has been continuously in occupancy. The remainder of the building from time to time has been occupied by various tenants. This acquisition represented the expending of $20,000 of the award money forthwith in the acquisition of other property similar or related in service or use to the property taken. All of the costs of the improvements enumerated above have been set up on the books of the petitioner as a part of its depreciable costs and depreciation based on these costs has been claimed on the company's returns and allowed by the respondent in each year after the year of *238 acquisition. Petitioner acquired in May 1936, by assignment from Mansion Realty Co., a mortgage for $50,000 on certain real estate. Petitioner owned other properties in addition to the properties condemned. During the period January 1, 1932 to December 31, 1938, there were no acquisitions of land nor improvements of property other than those enumerated above. Petitioner did not segregate or set apart the money which it received as awards for the taking of its properties. The money when received was deposited in petitioner's bank account along with the money it received from other sources. Checks against this account were drawn from time to time during the years 1932 to 1936, inclusive, in payment of petitioner's obligations of all sorts including current expenses, dividends, and expenditures for capital investments. During the years in which the award money was received petitioner paid dividends of $14,900 in 1932, $1,600 in 1935, and $22,500 in 1936. No dividends were paid by petitioner during the years 1933, 1934, 1937 and 1938. Issue (e). In its returns for the years 1932, 1935 and 1936, petitioner deducted as depreciation of brick buildings the amounts of $4,123.49, *239 $4,123.49, and $4,198.54, respectively. The cost used by petitioner on its returns in each year was $164,939.50, $164,939.50, and $207,341.50, respectively. The rate used was based upon a life of the building of 40 years. Of these claimed deductions the respondent disallowed $231.50, $106.50 and $136.32, respectively. In the statement attached to the deficiency notice the respondent explained the 1932 and 1935 adjustments as follows: (c) It is held that the allowance for depreciation on buildings computed by the revenue agent for 1932 in the amount of $3,891.99 is correct. Your contention that the allowable depreciation should be $4,123.49 for that year is therefore denied. (c) Depreciation deducted in return
$4,123.49
Allowed
4,016.99
Disallowed
106.50
A summary of the computation of the depreciation allowance follows: Cost
Unrecovered
Depreciation Allowed
Reserve
Buildings:
Reserve
Cost
1935
1936
1937
12/31/37
$164,597.87
$29,280.31
$135,317.56
$4,016.99
$4,062.02
$4,123.57
$41,4482.89
Issue (f). During the taxable years 1935 to 1937, inclusive, petitioner paid or incurred salaries to its office as follows: Officer
1935
1936
1937
Robert F. Hendrickson
$1,600
$2,400
$2,400
William J. Halleran
1,800
John J. Halleran
1,800
Julia M. Halleran
2,400
2,400
$5,200
$4,800
$4,800
*240 The respondent determined that a total of $1,200 for each year represented "a fair and reasonable allowance for personal services actually rendered within the purview of section 23(a) of the applicable Revenue Acts" and disallowed the balance of $4,000 in 1935 and $3,600 in 1936 and 1937, respectively, (matter in quotation marks from the statement attached to the deficiency notice). Mary Donoghue, Lauretta P. O'Neill, John J. Halleran, William J. Halleran, Laurence B. Halleran, and Thomas Halleran were brothers and sisters. Thomas died prior to 1932 and his widow is Julia M. Halleran. Mary died November 8, 1937, and J. Cyril Donoghue is her son. Lauretta died October 5, 1941. Robert F. Hendrickson is a cousin of John and his brothers. During the period from 1932 to 1938, inclusive, petitioner had issued and outstanding 100 shares of capital stock. During the same period Flushingside Realty and Construction Company and Winter Realty and Construction Company each had issued and outstanding 100 and 140 shares of capital stock, respectively. The ownership of the stock in these corporations was distributed as follows throughout that period: Winter Realty
Flushingside Realty
and Construction
and Construction
Twinboro
Company
Company
Corporation
Julia M. Halleran
23 1/3
28 4/7
28 4/7
Laurence B. Halleran
23 1/3
14 2/7
14 2/7
William J. Halleran
23 1/3
14 2/7
14 2/7
John J. Halleran
23 1/3
14 2/7
14 2/7
Mary Donoghue * *242 23 1/3
14 2/7
14 2/7
Lauretta P. O'Neill
23 1/3
14 2/7
14 2/7
Robert F. Hendrickson
None
None
None
Total
140 shares
100 shares
100 shares
*241 Petitioner contends that the award money it received as a result of the involuntary conversion of its property (parcels 17 and 30) into money was "forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property *243 similar or related in service or use to the property so converted * * * or in the establishment of a replacement fund." The respondent contends that neither one of these things occurred, and that, therefore, the entire gain should be recognized. Petitioner does not contend that any of the award money was expended "in the acquisition of control of a corporation owning such other property." We hold that not any of the award money was expended in the establishment of a replacement fund. The facts and circumstances underlying this holding are for all material purposes substantially the same as those in , and for that reason our holding here is the same as it was there. We will next consider whether any of the award money was "forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted." This is a question of fact. . The evidentiary facts were stipulated as *244 follows: 7. In November, 1930, the petitioner acquired from Flushingside Realty and Construction Company a tract of land at State and Farrington at a cost of $33,057.85. This land had been acquired by Flushingside Realty and Construction Company in July, 1930. During the period commencing August, 1930, and ending March, 1931, the petitioner erected a bus garage on this tract at a cost of $109,865.70. In June, 1935, and in May, 1936, the petitioner paid special assessments amounting to $2,117.36 which it added on its books to the cost of the improvements. The improvements consist of a one-story fireproof garage 165 feet by 235 feet which after standing idle a short time was first rented about 1932 to King Kullen and later in 1935 was leased for a period of 15 years to the North Shore Bus Company at a graduated rental beginning at approximately $15,000 a year. 8. On November 30, 1930, the petitioner acquired a vacant lot at Northern Boulevard and Bell Avenue at a cost of $28,346.55. The lot is 50 feet by 200 feet on the south side of Northern Boulevard near Wagner's Garage and runs through the block to the north side of Morrick Avenue. It is one of the few unrestricted lots in this *245 locality that can be used for garage purposes. 9. In June, 1932, the petitioner acquired an improved property at 40-11 (106) Main Street. This property was acquired by the payment of $20,000 in cash and the assumption of a mortgage thereon for $60,000. The mortgage is still outstanding and unpaid. On the books of the company $10,000 of the cash payment has been apportioned to the improvements on this property. The building is a four-story brick business building. The first story is 25 feet by 100 feet and the other three stories are each 25 feet by 80 feet. The lot is 25 feet by 100 feet. At the time of its acquisition the first and second floors were occupied as a restaurant by a tenant who has been continuously in occupancy. The remainder of the building from time to time has been occupied by various tenants. * * * * *
11. The petitioner acquired in May, 1936, by assignment from Mansion Realty Company a mortgage for $50,000 on certain real estate. The properties mentioned in paragraphs 7 and 8 (except for the amounts expended for special assessments amounting to $2,117.36) were all acquired prior to the receipt of any of the award money. They were paid for with funds other *246 than those received as compensation for parcels 17 and 30. We are unable to find from these stipulated facts that any of the award money in question was expended for these properties. Cf. . The amounts mentioned in paragraph 7 which were paid for special assessments in 1935 and 1936 were not expended in connection with the acquisition of other property similar or related in service or use to the property taken. The properties mentioned in paragraph 9 appear to be similar or related in service or use to the property taken, and we have found that $20,000 of the award money was expended in the acquisition of such property. Cf. . It is obvious that no part of the award money was expended in the assumption of the mortgage for $50,000 which is still outstanding and unpaid. For the reasons given in , we hold that the $50,000 mentioned in paragraph 11 as having been expended in the acquiring of a mortgage was not expended in the acquisition of other property similar or related *247 in service or use to the property taken. Our finding that $20,000 of the $53,165.40 award money received in 1932 was expended for similar property still leaves, after deducting the legal and title fees of $2,974.36, an amount that was not so expended in excess of the gain of $20,445.36 for that year. No part of the award money received in 1935 and 1936 was expended for similar property. We hold, therefore, that the entire gain of $110,537.58 is recognizable under the last sentence of section 112 (f), supra. Issue (e). Petitioner in support of this assignment of error offered the testimony of a public accountant who testified that on December 31, 1932, on Journal page 39, provision for depreciation of buildings was charged with $4,123.49, reserve for depreciation of buildings being credited with like amount; that the amount of depreciation represented 2 1/2 percent of $164,939.50; that the buildings were brick buildings in Flushing; and that petitioner did not have any wooden buildings. Section 23 (k) of the Revenue Act of 1932 and section 23 (1) of the Revenue Acts of 1934 and 1936 provide that in computing net income there shall be allowed as deductions "A reasonable allowance *248 for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." The evidence does not show that the amounts allowed by the respondent were unreasonable, or that petitioner is entitled to any greater allowances than those determined and allowed by the respondent. The respondent's determination upon this issue is sustained. Issue (f). During the taxable year 1935 petitioner on its return claimed a deduction for officers' salaries of $5,200; and for each of the years 1936 and 1937 it claimed a deduction of $4,800. The respondent determined that a total deduction of $1,200 for each of the years 1935 to 1937, inclusive, represented a fair and reasonable allowance. The question of what constitutes a "reasonable allowance for salaries or other compensation for personal services actually rendered" allowed as deduction as "ordinary and necessary expenses" in computing net income under section 23 (a) of the Revenue Acts of 1934 and 1936 is a question of fact. The evidence on this issue is very much the same as it was concerning a similar issue involved in *249 In that case the Commissioner in his determination of the deficiencies had allowed the taxpayer a deduction of $2,400 per annum as reasonable for salaries paid to its officers in the taxable years there involved. We upheld the determination of the Commissioner on the ground that the evidence in that case failed to convince us that petitioner was entitled to a grater allowance for salaries to its officers than the $2,400 per annum which the Commissioner had allowed. In the instant case the evidence shows that the business and activities of the petitioner were about the same as were those of the Winter Realty & Construction Co.; the services performed by petitioner's officers in the instant case appear to be about the same as were performed by the officers of Winter Realty & Construction Co. for it. We have, therefore, found on all the facts in evidence that $2,400 per annum is a reasonable amount of allowance for compensation paid to its officers by petitioner in each of the years 1935, 1936 and 1937, and that amount should be used in a recomputation under Rule 50. Issue (g). Petitioner contends that the case of *250 is pertinent. In that case we reversed our opinion in , and permitted McNeill to deduct $3,000 paid in 1922 to two individuals "to look after this property, effect the lease to the Government and attend to other matters in connection therewith." The lease in the McNeill case was for two years. In , we departed from the McNeill case and held that a brokerage fee, paid by a lessee holding under a long-term lease to secure a subtenant at a substantially larger rental was a capital expenditure and not a business expense. Our holding on this point was affirmed by the Second Circuit in , certiorari denied . See . In , we held that certain amounts expended by the trustees in that case for commissions and legal fees in leasing certain properties were capital expenditures, and in the course *251 of our opinion we said, p. 1205: * * * It is well settled that such expenditures are capital expenditures, which are not deductible in their entirety in the year in which paid out but are deductible pro rata over the term of the lease. ; petition to review dismissed by the ; 950 ; ; affd., ; certiorari denied ; and ; affd., ; certiorari denied . See also and cases there cited. In the instant proceeding we, therefore, hold that the respondent did not err in determining that the commission of $4,500 paid upon the acquisition of a 15 year lease *252 should be amortized over the term of the lease. Issue (h). Petitioner accrued and reported in 1936 the difference between the amount of interest received and the amounts it had accrued and reported in prior years. The accruals in prior years were to a large extent erroneous since the matter in connection with parcel 17 was in litigation until 1935 and the matter in connection with parcel 30 was in litigation until 1936. , certiorari denied . The respondent included in income for the year 1936 all the interest received in that year. This was correct under the facts which have been stipulated and we, therefore, sustain the respondent's determination as to this issue. Decision will be entered under Rule 50. Footnotes
*. Upon Mary Donoghue's death her stock passed to and has since that time been owned by her heirs J. Cyril Donoghue and three other children in equal shares. Each member of the Halleran family as enumerated above, except Laurence B. Halleran, was an officer of one or more of the three family-owned corporations. Petitioner's officers from 1935 to 1937, inclusive, were: Robert F. Hendrickson, president; William J. Halleran, vice president; John J. Halleran, for a part of the period secretary and treasurer, and for the remainder of the period treasurer; and Julia M. Halleran, secretary for a part of the period. Laurence B. Halleran was not an officer but acted throughout the entire period as general manager of the petitioner. He was paid a salary by petitioner of $1,800 in the year 1935 and $4,800 in each of the years 1936 and 1937. William J. Halleran, vice president, had supervision over the maintenance and repairs of the properties. He was not paid any salary in either of the years 1936 or 1937, but was paid a salary of $1,800 for the year 1935. The amounts expended for maintenance and repairs during the period from 1935 to 1937, inclusive, were $2,391.53, $1,093.72 and $1,573.98, respectively. The respondent allowed the deduction of the salaries and wages paid to all employees including Laurence B. Halleran in addition to the above-mentioned total deduction of $1,200 each year for salaries of officers. Each member of the Halleran family received a salary from one or more of the three family-owned corporations. The salary paid by each corporation to each stockholder was not the same, but the payments were so arranged that each stockholder (except Julia M. Halleran who owned twice as much stock in two of the corporations) received from the three corporations substantially the same total amount in compensation and dividends. Julia M. Halleran received a larger amount than the others. The balance sheets and statements of income and deductions of petitioner, the Winter Realty and Construction Company and the Flushingside Realty and Construction Company as disclosed by their respective income tax returns for the years 1932 to 1938, inclusive, have been stipulated as Exhibits 6 and 7 and are incorporated herein by reference. Twenty-four hundred dollars per annum is a reasonable allowance for salaries and other compensation for personal services actually rendered by petitioner's officers in each of the years 1935, 1936 and 1937. Issue (g). On its return for the year 1935, petitioner deducted $4,500 as "Rental Commissions Paid". The respondent disallowed $4,200 of this amount and in the statement attached to the deficiency notice he explained his disallowance as follows: (d) The claimed deduction of $4,500.00, representing the commission paid upon the acquisition of a fifteen year lease, is disallowed since it constitutes a capital expenditure amortizable over the life of the lease. Accordingly, an allowance of one-fifteenth, or $300.00, is made for the instant year. In addition, a similar allowance is made for each of the years 1936 and 1937. The lease was between petitioner as lessor and North Shore Bus Co., Inc. as lessee and was for a term of 15 years commencing on July 1, 1934, and terminating on June 30, 1949, unless sooner terminated on account of default by the lessee therein provided. Issue (h). As found under the first three issues, the City of New York on November 7, 1935, and May 4, 1936, paid petitioner the amounts of $3,296.60 and $27,228, respectively, or a total of $30,524.60 under the heading of interest. During the years 1933 to 1936, inclusive, petitioner accrued on its books and reported as interest income from the awards on parcels 17 and 30, amounts as follows: 1933
$ 6,230.08
1934
6,230.08
1935
6,135.77
1936
11,928.67
$30,524.60
For the year 1935, the respondent determined that petitioner reported excessive interest in that year in the amount of $2,839.17 which represented the difference between the above amount reported of $6,135.77 and the above amount received of $3,296.60. For the year 1936, the respondent determined that the difference between the amount received by petitioner in that year and the amount reported by petitioner in that year was additional interest income to petitioner. In the statement attached to the deficiency notice he explained this determination as follows: (a) Interest income from award ac-
crued during the taxable year
$27,228.00
Reported in return
11,928.67
Additional income
$15,299.33
Opinion BLACK, Judge: We will consider the issues in the order assigned. Issues (a), (b) and (c). Prior to 1932, the City of New York took by condemnation proceedings certain property owned by petitioner and during the years 1932, 1935 and 1936 paid petitioner a total of $157,000 as compensation (exclusive of interest) for the property taken. This compensation represented a capital gain to petitioner of $110,537.58. Petitioner contends that it is entitled to the benefit of section 112 (f) of the Revenue Acts of 1932, 1934 and 1936, and that in accordance therewith no part of this gain should be recognized. Section 112 (f) is identical in the three Acts mentioned, and is in the margin. (f) Involuntary Conversions. - If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.
[1]↩ The cases involving section 112 (f) and its prototype in other revenue acts are collected and analyzed in Mertens, Law of Federal Income Taxation, Vol. 3, sections. 20.120 to 20.129, inclusive.